CAVANAGH, J.
(dissenting). In People v Anderson, 398 Mich 361, 367-368; 247 NW2d 857 (1976), this Court held that basic requirements must be satisfied before a defendant’s request to waive counsel and proceed in propria persona may be granted. Michigan law additionally requires a trial court to follow the mandates of MCR 6.005(D) before granting such a request. Here, the Court of Appeals found that the trial court provided the disclosures required by MCR 6.005(D). However, the panel ultimately concluded that defendant’s waiver of his right to counsel was not unequivocal, fully knowing, intelligent, and voluntary as required by Anderson. *648 Because I agree with the Court of Appeals assessment of the proceedings, I must respectfully dissent from today’s decision.
I. DISCUSSION
The Sixth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees that “a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment.” Faretta v California, 422 US 806, 807; 95 S Ct 2525; 45 L Ed 2d 562 (1975); Gideon v Wainwright, 372 US 335, 340-344; 83 S Ct 792; 9 L Ed 2d 799 (1963). Concomitantly, the Sixth Amendment right to counsel also implies a “correlative right to dispense with a lawyer’s help.” Adams v United States, 317 US 269, 279; 63 S Ct 236; 87 L Ed 268 (1942). Under Michigan law, the right to self-representation is expressly protected by Const 1963, art 1, § 13 and by statute, MCL 763.1. At times, however, the right to counsel and the right to self-representation may appear to be at odds.[1]
In order to preserve the delicate balance between these two rights, the United States Supreme Court has held that any waiver of the right to counsel must be knowing, intelligent, and voluntary. Johnson v Zerbst, *649 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938). Moreover, the waiver must be made with “sufficient awareness of the relevant circumstances” and the defendant “must be warned specifically of the hazards ahead.” Iowa v Tovar, 541 US _; 124 S Ct 1379; 158 L Ed 2d 209 (2004). Finally, a court must “indulge every reasonable presumption against waiver ... .” Johnson, supra at 464.
This Court has likewise determined that specific requirements must be satisfied and express disclosures must be made before a trial court may grant a defendant’s request to waive counsel. First, the defendant’s request to waive the right to counsel must be unequivocal. Anderson, supra at 367. “Second, once the defendant has unequivocally declared his desire to proceed pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. . .. The trial court must make the pro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.” Id. at 368. Third, the trial court must determine that the defendant will not disrupt or unduly inconvenience the proceedings. Id. Fourth, the trial court must give the necessary disclosures set forth under MCR 6.005(D).[2] Adkins, supra at 722-723.
Thus, in order to determine whether the instant defendant “kn[e]w what he [was] doing and his choice *650 [was] made with eyes open,” Adams, supra at 279, a thorough examination of the trial court proceedings is required. Indeed, the existence of a valid waiver “must depend in each case upon the particular facts and circumstances surrounding that case....” Anderson, supra at 370; see also People v McKinley, 383 Mich 529, 536; 176 NW2d 406 (1970). Because the majority’s recitation of the facts and proceedings omits large portions of the exchange between defendant and the trial court, I find it necessary to fill in the blanks left by the majority’s opinion.
II. TRIAL COURT PROCEEDINGS
During its case-in-chief, the prosecution called Flo-rian Mager as a witness. At the end of defense counsel’s recross-examination, the following exchange took place:
Mr. Cook (defense counsel): I have no further questions of this witness.
The Court: Thank you, sir. You can step down.
Mr. King (prosecutor): The People call as their next witness, your Honor, Tracey Jo Williams.
The Court: All right. If there are any people in the . ..
Mr. Cook: (Interposing) Your Honor, there is one more question that I would ask.
The Court: All right. Sir, can you come back to the stand? .. . You’re still under oath to tell the truth, sir.
The Deputy: Mr. Williams? Mr. Williams?
Mr. Cook: No, your Honor, no more questions.
The Court: Thank you, sir. You can step down.
(Witness excused)
*651 Mr. King: Once again, your Honor, the People call, as their next witness, Tracey Jo Williams.
Your Honor, may this witness be excused? He is working at this time.
The Court: Any objection? Mr. Cook, any objection to ...
Mr. Cook: (Interposing) I’m sorry, your Honor?
The Court: Any objection to this witness being excused?
Mr. Cook: No, your Honor.
The Defendant: Yes. Wait.
The Court: He’s excused. Mr. Williams.
The Deputy: Mr. Williams. Mr. Williams.
The Defendant: Could we get a recess for five minutes, please, your Honor?
The Deputy: No, you don’t talk to your Honor, you talk to your attorney.
Mr. Cook: Your Honor, may I have just a few minutes with my client?
The Court: All right. We’ll excuse the jury for a few minutes.
For nearly one half-hour, the trial court was in recess. Once the parties reconvened, the following exchange ensued:
The Court: Are we ready to bring in the jury?
Mr. King: Yes, your Honor.
Mr. Cook: Yes, your Honor.
The Court: Back on the record on case number 4026— hold off—the People versus Rodney Williams, out of the presence of the jury.
Mr. Williams, I’m going to inform you, right now, that if you act up, again, you are going to be taken out of the courtroom. And I didn’t want to say that in front of the jury, but that’s what’s going to happen.
The Defendant: Yes, ma’am.
The prosecutor called the next witness, Tracey Jo Williams. After defense counsel’s second recross- *652 examination, the trial court instructed Ms. Williams to step down and the court broke for lunch. The parties reconvened after the break and the following occurred outside the presence of the jury:
Mr. Cook: For the record, your Honor, my name is Donald Cook, appearing on behalf of Mr. Williams.
Your Honor, I believe he wants to address the Court. And I think we probably need to get it out of the way before we have the jury here.
The Court: All right. Out of the presence of the jury, What would you like to say, Mr. Williams?
The Defendant: Good morning [sic], your Honor.
Your Honor, due to circumstances, I would like to terminate my representation of my attorney, Mr. Donald A. Cook, due to the fact that Mr. Cook has failed to represent me, appropriately. He has allowed the prosecution witnesses to testify. And he has failed to ask them pertinent questions that’s pertaining to my life. Also, he has allowed the first witness to be excused from this courtroom. And I am entitled, I hope, to a proper, fair representation, and also a fair trial.
And, also, if the Court deems proper, with all honor and due respect, I would like to have—I do not wish to adjourn this proceeding, because I know this has been going on all along. But I would like to represent myself, in proper person. And, also, if...
The Deputy: (Interposing) Quiet in the courtroom.
The Defendant: (Continuing) — if, only if this Court would agree orally, and a written consent, please, that Mr. Florian Mager be brought back to court, and allow me to recross-examine him, as well as Ms. Tracey Jo Williams. This is for my life. And I accept and I appreciate all that Mr. Donald Cook has done, but these records have facts here, statements that cannot be denied, reports from the Detroit police officers, a Mr. Jerry Jones, making statements, himself, and Mr. Florian Mager, that have not been brought out. And I can do that. [Emphasis added.]
*653 The trial court then gave defense counsel an opportunity to place comments on the record. Defense counsel indicated that he appropriately cross-examined the witnesses in question and that he believed those witnesses had been excused. The trial court then informed defendant that the court must abide by the rules of evidence and that certain things that defendant believed may be introduced may not actually be admissible. At this point, the trial court asked defendant if he realized the risk he was taking by representing himself. The prosecutor then weighed in, stating:
Mr. King: I was just going to indicate, your Honor, that the People would strenuously object to this, especially in this stage of the proceedings. I agree with Mr. Cook that he’s done all that he can do in this case. And you can only play with the hand that you’re dealt. And Mr. Cook has represented Mr. Williams, I think, in the best possible light that someone can represent someone. He hasn’t done anything—or left anything out, that I can see, at least at this point.
The trial court attempted to further inform defendant of the great risks involved with self-representation. For example, the trial court noted that another attorney would not be appointed, defendant could not later claim he was ineffective as his own counsel, defendant had not attended law school, and defendant was not trained in the rules of evidence. Further, the trial court warned that if defendant disrupted the proceedings, Mr. Cook would take over defendant’s representation. The trial court also posed the following question:
The Court: Are you making this request knowinging [sic], intelligently, and voluntarily?
The Defendant: Yes ma’am.
*654 The trial court also informed defendant of the charges against him and the possible penalties he faced. Despite this exchange, the following colloquy then took place:
The Court:... Do you understand all that?
The Defendant: Yes, ma’am.
The Court: Okay.
The Defendant: Your Honor?
The Court: Yes?
The Defendant: Ma’am, is it also on the record, and it will probably [be] written down, that I will have an opportunity to recross-examine the prosecutor’s first two witnesses, Florian Mager and —
The Court: (Interposing) No, we’re not bringing in those other witnesses, we’re continuing with the trial. It’s the Court’s opinion that you had proper representation. Mr. Cook is an excellent attorney. And we are not starting the trial over, we are continuing with the trial. You can still have Mr. Cook, if you want, or you can continue and represent yourself....
Notwithstanding the trial court’s best efforts, defendant continued to articulate his reasons for wanting to recall the first witness. Apparently, defendant remained under the impression that the first witness’s preliminary examination testimony conflicted with his trial testimony.
The Defendant: But the jury have heard Mr. Mager only state that at the lineup he was not sure. That’s one not sure. And if, at the preliminary exam, if Mr. Mager is not sure, again, then this man has no—he’s not sure if it was me, or not.
The prosecutor then indicated that if defendant was permitted to look at the preliminary examination, his concerns would disappear. While the majority includes *655 some portions of this exchange, I believe that the proceedings at this particular stage should be viewed in more detail.
Mr. King: And I only stand, your Honor, not to entertain the defendant, but that is a gross misrepresentation of the preliminary examination transcript.... What he’s saying he’s taking out of context. And if he reads the whole thing,
I think he’ll understand why Mr. Cook didn’t elaborate with further questioning of the witness.
The Court: All right. I’m going to .. .
The Defendant: (Interposing) May I read it?
The Court: No. I’m going to ask you one more time. Do you want to represent yourself? Because we’re bringing in the jury.
The Defendant: Your Honor, with all due respect...
The Court: (Interposing) I asked you one question.
The Defendant: Your Honor, this is my life.
The Court: Do you want to represent yourself?
The Defendant: Your Honor? Please. I’m pleadin’ with you, your Honor.
The Court: Answer my question.
The Defendant: What’s a little minute in my life? Please.
The Court: Answer my question.
The Defendant: Yes, ma’am.
The Court: All right. Let’s bring in the jury.
After this colloquy, defendant nevertheless attempted to recall the second witness because he was under the impression that the witness had not been excused.
III. ANALYSIS
In Adkins, this Court concluded that proper compliance with waiver of counsel procedures requires that the trial court “engage, on the record, in a methodical assessment of the wisdom of self-representation by the *656 defendant.” Adkins, supra at 721 (emphasis added). Moreover, this Court abides by the general principle that a trial court “ ‘ “should indulge every reasonable presumption against waiver....”’” Id., quoting Johnson, supra at 464. “The right to counsel, as guarantor of a fair trial, is a fundamental right that should not be deemed waived unless the record clearly and unequivocally evidences such waiver, a record that must be made by the trial judge’s diligent inquiry into the relevant factors.” Adkins, supra at 740-741 (CAVANAGH, J., concurring in part and dissenting in part). Because the record indicates that defendant did not unequivocally, knowingly, intelligently, and voluntarily waive his right to counsel, defendant’s attempted waiver was invalid.
A. DEPENDANT’S WAIVER WAS NOT UNEQUIVOCAL
While the trial court followed the spirit of MCR 6.005(D) and asked defendant if his waiver was made “knowingly, intelligently, and voluntarily,” the trial court did not make an express finding on the record that defendant unequivocally waived his constitutional right to counsel. In Adkins, this Court held that trial courts must substantially comply with the requirements of Anderson and MCR 6.005(D).[3] Thus, Adkins, supra at 721-722, directs a trial court to indicate on the record whether the attempted waiver is unequivocal. Even under a substantial compliance analysis, however, *657 the trial court in this case wholly failed to indicate whether it believed defendant’s request was contingent on other factors—namely, recalling the prosecution’s witnesses and examining the preliminary examination transcripts—or whether the request was unequivocal.
In any event, the record more than adequately demonstrates that defendant’s choice was not unequivocal. The majority states that “initially, defendant conditioned his waiver of the right to counsel on the trial court’s granting of his request to recross-examine two excused witnesses.” Ante at 643. An evenhanded reading of the trial transcripts, however, reveals that despite the trial court’s best efforts, defendant’s waiver was conditional throughout the proceeding. The trial court informed defendant that he would not be able to recall the excused witnesses and then repeatedly asked defendant if he wished to represent himself. In spite of this line of questioning, defendant still expressed his desire to recall the witnesses and review the preliminary examination transcript. As such, a balanced evaluation of the record indicates that although defendant was listening to the trial court, defendant was not hearing what the trial court had to say.
This Court has previously noted that “the effectiveness of an attempted waiver does not depend on what the court says, but rather, what the defendant understands.” Adkins, supra at 723. Under the circumstances of this case, it is clear that defendant did not fully comprehend the trial court’s warnings and defendant wavered in his request throughout the proceeding. When the record is objectively viewed, one is left with the distinct impression that defendant eventually surrendered to the trial court’s questioning in the *658 hopes of introducing evidence that he believed favorable to his case. Thus, defendant’s attempted waiver was invalid.
Further, I am puzzled by the majority’s conclusion that defendant’s “unrealistic” hopes did not render defendant’s attempted waiver invalid. Ante at 644. The majority acknowledges that defendant was not truly hearing what the trial court was saying. Further, the majority appropriately notes that defendant’s understanding “can only be gleaned by reference to what he said on the record.” Ante at 644. Upon its review of the record, the majority effortlessly concludes that defendant’s hopes were “unrealistic.” However, defendant nevertheless harbored these hopes and the trial court should have similarly recognized that these “unrealistic” hopes were preventing defendant from hearing what the trial court was saying. Adkins could not be more clear that the effectiveness of the attempted waiver depends on what the defendant understands.
Finally, although the trial court may not have been under any obligation to permit defendant to view the transcripts or recall the witnesses, the trial court erred when it failed to recognize that defendant’s attempted waiver was equivocal. The overarching rule of this Court’s decision in Adkins, as well as the United States Supreme Court’s decision in Johnson, is that if there is any doubt about the unequivocal nature of a defendant’s attempted waiver of counsel, then the trial court should deny the defendant’s request and defendant should proceed with counsel.[4]
*659 B. DEFENDANT’S WAIVER WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY
For essentially the same reasons as detailed above, I cannot lightly assume defendant possessed the requisite state of mind under the facts of this case. Specifically, the record evidences that defendant’s attempted waiver was not knowing, intelligent, and voluntary. Even though the trial court followed the spirit of Anderson and its progeny, the record indicates defendant was fixated on his ability to recall the excused witnesses and view the preliminary examination transcripts. As the hearing was drawing to a close and the trial court was understandably losing its patience, defendant kept pleading for his life. Nevertheless, the trial court continued its questioning and defendant eventually answered affirmatively to the question repeatedly posed. When the record is reviewed fairly, I believe it is apparent defendant’s waiver was not knowing, intelligent, or voluntary.
IV CONCLUSION
In sum, I agree with the Court of Appeals assessment of the proceedings. Defendant’s attempted waiver was conditional throughout the proceedings. Further, despite the trial court’s best efforts, it was evident that defendant did not fully understand the nature of the trial court’s admonishments. Thus, defendant’s attempted waiver was not unequivocal, knowing, intelli *660 gent, and voluntary. I would, therefore, affirm the decision of the Court of Appeals.
KELLY, J., concurred with CAVANAGH, J.

 “There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court’s decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel.” Faretta, supra at 832. “This Court, however, has found that a defendant has either a right to counsel or a right to proceed in propria persona, but not both. . . . Consequently, there is unavoidable tension created between two constitutional rights when a defendant chooses self-representation.” People v Adkins (After Remand), 452 Mich 702, 720; 551 NW2d 108 (1996).

 MCR 6.005(D) provides in pertinent part:
The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
*650 (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

 In Adkins, I agreed that “substantial compliance” with the requirements of Anderson and MCR 6.005(D) adequately protects a defendant’s rights. Adkins, supra at 737-738 (Cavanagh, J., concurring in part and dissenting in part). However, I remain committed to the view that strict compliance with these requirements better protects a defendant’s rights, as well as ensures that an appellate parachute is not created. People v Dennany, 445 Mich 412, 456-458; 519 NW2d 128 (1994) (Cavanagh, J., concurring in part and dissenting in part).

 It has often been said that “[a]n indigent defendant, entitled to the appointment of a lawyer at public expense, is not entitled to choose his lawyer. He may, however, become entitled to have his assigned lawyer replaced upon a showing of adequate cause for a change in lawyers.” People v Ginther, 390 Mich 436, 441; 212 NW2d 922 (1973). Here, the trial court found that defense counsel provided proper representation. *659 Moreover, defendant did not assert a breakdown in the attorney-client relationship. Under these particular circumstances, the trial court, and defendant for that matter, may have been better served by reliance on the general presumption against waiver. “Where a defendant, for whatever reason, has not unequivocally stated a desire for self-representation, the trial court should inform the defendant that present counsel will continue to represent him.” Adkins, supra 722 n 18 (emphasis added).